FILED
2007 Feb-08  PM 01:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

AARON LEWIS MCELROY,

      Movant,

vs.                            CIVIL ACTION NO. 06-IPJ-HGD-8031-M
                                    CRIMINAL NO. 04-J-238-M

THE UNITED STATES OF AMERICA,

      Respondent.

## <u>MEMORANDUM OPINION</u>

This is a motion to vacate, set aside, or correct a sentence, brought by a federal prisoner, pursuant to 28 U.S.C. § 2255.  The movant, Aaron Lewis McElroy, was convicted in this court on November 1, 2004, on his plea of guilty to one count of conspiracy to possess with intent to distribute, and to distribute, more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine,  in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. 846 and 841(b)(1)(A); and one count of being an unlawful user of a controlled substance in knowing possession of a firearm which has traveled in interstate commerce, in violation of 18 U.S.C. § 922(g)(3). He was sentenced on June 21, 2005, to a term of imprisonment for 178 months and 5 days as to Count One, and 120 months as to Count Three, with each to run concurrent with the other.

No notice of appeal was filed.

McElroy has now filed a § 2255 motion to vacate, set aside, or correct his sentence (doc. 1).  In support of his motion, McElroy claims that:

1)   denial of effective assistance of counsel based on:
   a)   failure to prosecute a direct appeal.
   b)   failure to object to imposition of a sentence based on drug amounts not pleaded in the indictment, submitted to a jury or stipulated in the plea agreement.
   c)   failure to object to the increased sentence based on unproven information in the presentence report.
   d)   failure to object to sentence enhancement of two levels in the presentence report, pursuant to USSG § 2D1.1(b)(1).

2)   his plea was not voluntary because he was under the influence of prescribed drugs, but informed by counsel not to mention this when questioned by the court on this very issue.

3)   the State conviction upon which this case was predicated was obtained in violation of movant's Constitutional Fifth and Sixth Amendment rights.

In response to the court's order to show cause, the respondent has filed an answer in which it maintains that the claims are due to be dismissed because they are without merit (doc. 4).  By order of the court, the parties were advised that the respondent's answer would be treated as a motion for summary dismissal (doc. 5). The movant was advised that in responding to the motion for summary dismissal, he must supply the court with counter-affidavits and/or documents to set forth specific

-2-

facts showing that there are genuine issues of material fact to be decided.   In response, the movant has filed an unsworn reply to the government's response (doc. 6).

## INEFFECTIVE ASSISTANCE OF COUNSEL

The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.  "Because the [petitioner] must prove both deficiency and prejudice, a [petitioner's] failure to prove either will be fatal to his claim." *Johnson v. Scott,* 68 F.3d 106, 109 (5th Cir. 1995).

Under the *Strickland* test, the petitioner must initially show that counsel's representation fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "While it need not be errorless, counsel's advice '*must be within the realm of competence demanded of attorneys representing criminal defendants*.'" *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993) (emphasis in original)(*quoting Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir.)(en banc), *cert. denied*, 502 U.S. 835 (1991)). In making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The effectiveness or ineffectiveness of counsel must be evaluated by consideration of the totality of the circumstances. *Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir. 1983), *cert. denied,* 467 U.S. 1219 (1984).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. *Strickland,* 466 U.S. at 691-92. In order to establish "prejudice, [a petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Williams v. Taylor,* 529 U.S. 362, 391, 120 S.Ct. 1495, 1511-1512

(2000).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  *Strickland,* 466 U.S. at 694.  Furthermore, in addition to showing that the outcome would have been different, a petitioner must prove that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair."  *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994)(*citing Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 844 (1993)).  In other words,  "counsel's unprofessional errors [must] so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict suspect." *Fretwell,* 506 U.S. at 369, 113 S. Ct. at 842.  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Fretwell*, 506 U.S. at 372, 113 S. Ct. at 844.

In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), the Supreme Court held that "the two- part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel," and that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. at 58-59, 106 S. Ct. at 370-71; *United States v. Pease*, 240 F.3d 938 (11th Cir. 2001).

McElroy claims that he received ineffective assistance of counsel due to several instances where counsel did not object to statements contained in the presentence report ("PSI").  He claims that counsel's failure to object to imposition of a sentence based on drug amounts not pleaded in the indictment, submitted to a jury or stipulated in the plea agreement; and failure to object to the increased sentence based on unproven information in the PSI violated his right to effective assistance of counsel.

His plea agreement shows that the movant agreed to plea guilty to conspiracy to possess and distribute "more than 500 grams of a mixture of substance containing a detectable amount of methamphetamine."  Plea Agreement at 1, ¶ I.(a) (doc. 24).  It also states that "[b]ased on its investigation, the government can prove that McElroy possessed and distributed at least FIFTEEN (15) POUNDS of methamphetamine during the period ..."  Plea Agreement at 2, ¶ I.(c)(2).  McElroy signed this document on November 1, 2004, directly under the paragraph which included the statements "I have read and understand the provisions of this agreement" and "I agree to enter my plea as indicated above on the terms and conditions set forth herein."  Plea Agreement at 10.

In response to the PSI, which calculated a base offense level of 36 "because the offense involved at least 5 kilograms but less than 15 kilograms of a mixture and substance containing methamphetamine," McElroy, through his counsel filed an

objection asserting that the base offense level should have been Level 32, based on an amount "in excess of 500 grams," as pleaded in the indictment.  As such, the court finds that counsel did object to the amount of methamphetamine used to calculate the movant's sentence.  The court overruled these objections.  *Transcript of Sentencing Hearing*, at 4.  This ground of McElroy's petition has no merit as movant's counsel made the very objection McElroy raises here

McElroy next claims ineffective assistance of counsel due to his attorney's failure to object to a sentence enhancement of two levels in the PSI, pursuant to USSG § 2D1.1(b)(1).  The record reflects that counsel filed numerous objections to the PSI on January 24, 2005, and March 16, 2005 (docs. 31 and 36).  The plea agreement contains the following assertion:

> A federal search warrant for McElroy's residence ... was obtained and executed.... Agents seized several firearms, but McElroy claims ownership of only one: a Revelation Model R310AB 12 gauge pump shotgun, serial number G958133.

Plea Agreement, at 3, ¶ I.(c)(5).  McElroy pleaded guilty both to possessing a shotgun while involved in a conspiracy to distribute methamphetamine, and to being an unlawful user of methamphetamine in knowing possession of a firearm.  These are two separate offenses for which movant was given two separate sentences, to run concurrently.  Because the movant pleaded guilty to two separate and distinct crimes,

he was appropriately given two separate sentences.  Because neither of these charges was pursuant to 18 U.S.C. § 924(c), the Guideline prohibition against double counting is not implicated.  *See e.g., U.S. v. Fernandez*, 2007 WL 30033 (11th Cir.2007) (where defendant pled guilty to violation of 18 U.S.C. § 922, Court noted double counting prohibition not implicated).  Movant's argument as to the failure of counsel to raise this objection is meritless.

McElroy also asserts that his counsel was ineffective due to his failure to object to an "increased sentence obtained based upon unproven information in the PSI, to which movant did not concede..."  McElroy then lists three specific paragraphs in the PSI as the basis for this contention, those being ¶¶ 14, 16 and 19.  However, in the objections to the PSI filed by his counsel, Mr. McElroy objected to the contents of:

> Paragraphs 16, on page 7 of the PSI, which provides a two (2) level enhancement based on the unlawful importation of the drugs .... Paragraph 19, which provides a four (4) level enhancement because "the defendant was an organizer or leader...

Defendant's objection at 2.  The court finds no merit to this contention.[1]

McElroy also asserts that he received ineffective assistance of counsel due to his counsel's failure to file an appeal.  He does not elaborate on this claim by

---

[1]Paragraph 14 of the PSI involves the two level increase pursuant to § 2D1.1(b)(1), as to which the court has already found the movant's claims to be without merit.

identifying what issues he believed merited an appeal or stating any matter in which he believed the trial court erred. Movant's counsel stated by affidavit that he saw no merit in pursuing a direct appeal and that there were no viable issues which he could have pursued in good faith on a direct appeal. Government's exhibit 1. Additionally, movant's counsel avers he was never given any instruction by McElroy to file an appeal. *Id*.

"In general, a defendant must assert an available challenge to a sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding." *Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir. 1989), *cert. denied*, 494 U.S. 1018 (1990). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994). If a defendant fails to pursue an available claim on direct appeal, he is barred from presenting the claim in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error. *Id. See also Cross v. United States,* 893 F.2d 1287, 1289 (11th Cir.), *cert. denied,* 498 U.S. 849 (1990). "[A] prisoner collaterally attacking his conviction can establish cause for a procedural default if he can show that 'some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule,' or that his attorney's performance failed to meet the *Strickland* standard for

effective assistance of counsel." *Reece v. United States*, 119 F.3d 1462, 1465 (11th Cir. 1997).  In addition to showing cause, the movant must also demonstrate that he was prejudiced.  To show prejudice, he must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982)(emphasis in original).  A federal habeas court, however, will consider a procedurally defaulted claim in the absence of cause, if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent."  *Smith v. Murray*, 477 U.S. 527, 537 (1986) (*quoting, respectively, Engle*, 456 U.S. at 135, and *Murray,* 477 U.S. at 496).

Because none of the claims have merit, McElroy cannot prove that he was prejudiced by his attorney's failure to raise these claims on direct appeal.  Because of movant's guilty plea, and the trial court's substantial reduction of McElroy's sentence pursuant to the government's § 5K1.1 motion, the court is of the opinion that movant cannot meet the actual prejudice standard of *Strickland, supra*.  In other words, McElroy can point to no issue which, if it had been raised on a direct appeal, would have changed the sentence he received.  Therefore, the court finds McElroy's claim for ineffective assistance of counsel to be without merit.

## INVOLUNTARY PLEA

A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, *see, e.g., Johnson v. Zerbst,* 304 U.S. 458, 464-465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 [ (1938) ], or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense. *Smith v. O'Grady,* 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941). McElroy asserts that his plea was not voluntary because he was under the influence of prescribed drugs, but informed by counsel not to mention this when questioned by the court on this very issue. However, he has failed to produce any evidence that he was actually taking prescribed drugs at the time his plea was entered. The only evidence he provided is in the form of an unsworn, unsigned piece of paper dated October 14, 2004, from the Calhoun County Jail, listing medications. Movant's exhibit B. In a Forensic Evaluation Report of May 24, 2005, the psychologist who examined McElroy specifically noted that a physician who examined movant after he sustained an injury falling off of a bunk bed, had discontinued previously prescribed antidepressent medications. Report of May 24, 2005 (doc. 43).

During his plea, the court carefully questioned McElroy to be certain he understood what he was doing, and he indicated that he understood:

> THE COURT: If you – if I do or say something that you don't understand, it's actually your duty to tell me that you don't understand it, okay?
> THE DEFENDANT: Yes, ma'am.
> THE COURT:   Are you ready to proceed?
> THE DEFENDANT: Yes, ma'am.

*Transcript of Plea Hearing*, at 3.

> THE COURT: Have you, during the last forty-eight hours, going back forty-eight hours from right now, taken any drugs, whether they are prescription drugs or otherwise or consumed or ingested any substance that might affect your ability to understand this plea?
> THE DEFENDANT: No ma'am.

*Transcript of Plea Hearing*, at 4-5. Movant's counsel then volunteered that McElroy had taken three Advil that morning for a headache. *Id*. The court then continued:

> THE COURT: ... Do you suffer from any mental or emotional impairment or any physical illness that might affect your ability to understand the plea agreement and later on the sentencing proceeding?
> THE DEFENDANT: No, ma'am.
> ....
> THE COURT : Do you understand that the court must be satisfied that you are entering this plea freely and voluntarily and knowing what you are doing?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Do you understand that you actually have a duty to tell me if I say or do something that you don't understand?
> THE DEFENDANT: Yes, ma'am.

*Transcript of Plea Hearing*, at 5. During the same hearing the court again asked:

> THE COURT: Are you right now under the influence of drugs or alcohol or medicine?
> THE DEFENDANT: No, ma'am.

*Transcript of Plea Hearing*, at 17.  McElroy also signed a Guilty Plea Advice of Rights Certification immediately prior to his plea (doc. 23).  His signature appears directly below the statement:

> I HAVE READ THE ABOVE OR IT WAS READ TO ME AND I UNDERSTAND IT.  I DO NOT HAVE ANY QUESTIONS ABOUT ANY OF MY RIGHTS AS STATED ABOVE.  **I AM NOT UNDER THE INFLUENCE OF DRUGS, ALCOHOL OR MEDICINE**. MY SIGNATURE APPEARS BELOW.

*Id* (emphasis added).

The "representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977).  As McElroy has no evidence that he was actually under the influence of any prescribed medications at the time of his plea, nor any evidence that such medications rendered him unable to understand

-13-

the nature of the constitutional rights he was waiving, movant's claim that his plea was "involuntary" is without merit.

## VIOLATION OF CONSTITUTIONAL RIGHTS

Finally, McElroy claims that the State conviction upon which this case was predicated was obtained in violation of movant's Constitutional Fifth and Sixth Amendment rights. McElroy does not expound on what he means by this argument. This court has no authority to review a State conviction based on the motion before it.  As the movant pleaded guilty to actions which constituted federal crimes, and now collaterally attacks his plea of guilty and sentencing for those federal crimes, the court is unable to glean any manner in which any State conviction could impact movant's plea or sentence.  As such, the court finds this ground to be without merit.

An appropriate order will be entered.

DONE this 8th day of February, 2007.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE